Filed 7/21/26  C.H. v. S.T. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| C.H.,<br><br>　　　　Appellant,<br><br>　　v.<br><br>S.T.,<br><br>　　　　Respondent. | D085511<br><br><br>(Super. Ct. No. 24FL010427C) |

APPEAL from orders of the Superior Court of San Diego County, Leah Boucek, Commissioner.  Affirmed.

C.H., in pro. per., for Appellant.

No appearance for Respondent.

### INTRODUCTION

C.H. appeals from the family court's orders awarding child custody and visitation, denying his request for a domestic violence restraining order (DVRO) against the mother of his child, and granting the mother's request for a DVRO against him.  We affirm each order.

1

## BACKGROUND

### I.

### *Custody and Visitation*

C.H. (Father) and S.T. (Mother) share one child born after their brief relationship ended. The child, who is now a little over 21 months old, was born prematurely and spent time in the neonatal intensive care unit.

Three days after the child's birth, in September 2024, Father filed a petition to establish his parental relationship and a request for order (RFO) seeking orders for custody and visitation.[1] Father requested primary physical custody of the child but if Mother could demonstrate that she is mentally stable, he agreed to "split custody 50/50." Mother requested primary physical custody of the child on the basis the child was born prematurely, with low birth weight, and is currently breastfeeding. She expressed her belief it would be in the child's best interest if the parties "gradually work [their] way up to joint physical custody once [the] child weans."

The family court services (FCS) mediator recommended the parties exercise joint legal custody, that the child primarily reside with Mother, and Father would be on a step-up plan where his parenting time with the child would expand at certain milestones. The mediator also recommended the parties split holidays, Mother vacation with the child for up to three days each year, and Father to have the same vacation option once the child turned one year old.

---

1   Father withdrew his request for court-ordered genetic testing because he took a voluntary paternity test that established he was the child's biological father. Judgment of parentage was entered on December 23, 2024. Father also requested a legal change of the child's name, which was granted.

On November 26, 2024, Commissioner Leah Boucek held a hearing on Father's RFO. The court informed the parties that it had read their declarations and the FCS report and recommendations.[2] Father stated he agreed with the recommendations for joint legal custody and the split holiday schedule. He disagreed with the recommendation on physical custody, explaining that it was a reduction from his current practice of six hours each day and one overnight. He believed the parties should share "equal time" with the child. Mother explained she went along with the parties' current schedule "to stop the pressure" she feels from Father. Nevertheless, she agreed with FCS's recommendations and was fine with joint physical custody when the child was a little older.

In response to the parties' statements, the court explained it was not inclined to "jump[ ] to a 50-50 equal sharing time for a two-month[-]old child," explaining "[t]here are reasons, as explained by [FCS], that they recommend parenting plans based on the developmental age and stage of a child." The court, however, asked Mother whether she would be amenable to "something in between" the parties' current schedule of "every day and an overnight" to a step-up plan that gradually increased time for Father. Mother agreed more overnight visits would be appropriate after the child was six months old because she felt the child was already under stress with the current, frequent exchanges.

The court gave Father the last word at the hearing. Father responded by going through his exhibits with the court, including for example text messages between the parties he asserted showed Mother's intention to "make things hard for [him]." Father had lodged 63 exhibits, totaling over 90

---

[2] Both parties proceeded as self-represented litigants throughout the family court proceedings, and Father has continued to do so on appeal.

pages, for the hearing. After Father had discussed several of his exhibits, the court stated they were "running out of time," that it had "already reviewed some of [the] exhibits" but would keep Father's exhibits and go through them and "make sure that everything" would be considered before ruling. The court informed the parties they would receive a written ruling the next day by email.

On November 27, 2024, the court issued written findings and order after hearing (FOAH) adopting FCS's recommendations for custody and visitation. The court awarded joint legal custody to the parties and primary physical custody to Mother. It awarded Father four hours of parenting time with the child each Tuesday and Thursday and three and half hours each Sunday. The court provided a step-up plan where Father's time expanded on the child's 6-month, 9-month, and 12-month milestones. At the 12-month milestone, Father's parenting time would increase to six hours each Tuesday, Thursday, and Saturday and overnight visits each Sunday from 11:00 a.m. to Monday 5:00 p.m.

On January 10, 2025, Father filed his first notice of appeal, challenging the November 27, 2024 FOAH.

## II.

### *DVRO Requests*

On February 24, 2025, Mother filed a request for a DVRO against Father. Father followed by filing one of his own the same day. The court issued temporary restraining orders pending an evidentiary hearing. The evidentiary hearing, with Commissioner Boucek presiding, took place over four partial days—March 17, March 24, April 1, and April 18, 2025.[3] Both parties testified and presented numerous exhibits, including video recordings, and Father's fiancée, C.J., testified.

The court addressed Mother's DVRO request first because it was filed first. The court deemed Mother's sworn declaration as part of her sworn testimony. Mother testified that the parties had a custody exchange on February 20, 2025. Father walked to Mother's car, with his fiancée holding the child, and he had a note in his hand. Father told Mother, " 'I don't want to say too much but . . . ' " and held up the note for Mother to read. It said, " 'Leave son with me and go kill yourself.' "

Mother filmed the note with her phone camera. She testified this is Father's "whole game, this sadistic game with trying to provoke emotional responses out of [her] so that he can keep bringing [her] back to court," and she was tired and exhausted by his conduct. She explained that "most of the exchanges go fine" because the parties do not speak to each other. But Father will do "indirect things" like insult Mother to another person within Mother's earshot for her to hear. At another exchange earlier in January, Father arrived "blasting music" with lyrics of "I can't stand you. I want to beat you black and blue." Mother took the lyrics to be "cues."

---

[3]    We have the reporter's transcripts of the proceedings on March 17, April 1, and April 18 but not March 24, 2025.

The court confirmed the statement in Mother's declaration that she has struggled in the past with mental health issues and had sought therapy for depression because of her experience with Father. The court also confirmed it had a "screenshot" of the note from the February 20 exchange which was attached to Mother's DVRO request. Mother then played video recordings of the January exchange with Father's music lyrics and the February exchange with Father's note. Mother testified that the note disturbed and destroyed her peace, and she has been staying with her mother despite having her own apartment because she does not feel safe.

In response, Father testified Mother is "a manipulator" and began referring to text messages he had as "proof" of Mother admitting she was a manipulator. Mother objected she had not seen the asserted evidence and when the court told Father he could not submit the evidence to the court if he had not served it in advance, Father said, "Okay. That's fine." Regarding the video recording of the January exchange, Father testified "none of the music that I play has anything to do with [Mother]." Father explained that Mother is "always making anything about her" and he begs her to not fight with him. He denied that he ever threatened, stalked, harassed or "done anything otherwise to pose a risk to her safety." As for the February exchange and the note, Father stated, "I'm not even going to speak on that" and asserted his Fifth Amendment right to remain silent.

The court confirmed Father's refusal to answer "any questions" about Mother's claim regarding the note. Despite the invocation, Father asserted the video recording of the February exchange showed Mother "slapped" and "pushed [their child] to the side and then chased after" Father, "swinging" at him. Later in the hearing, Father played his "slowed-down version" of the recording for the court, after which the court stated, "You cannot tell from the

6

video that what you are alleging happened happened.  It is not clear at all."
Father responded, "[M]aybe I need a better laptop if you can't see it."  The
court told Father, "I will let you play it next week again, if you need to,
whether it's on a different laptop or on your phone.  What I have seen today
does not at all clearly show what you are alleging happened."

The court asked Father if he had anything else he wanted the court to
know regarding Mother's claim since he was not going to respond regarding
the note.  Father stated, "the note doesn't show what she claims it does."  The
court stopped Father since he had asserted his Fifth Amendment right on
that topic and stated that it had "a copy of the note that says, 'Leave our son
and go kill yourself.' "  Father testified the note said, "Leave son with me.
Don't kill yourself."  He explained Mother had been telling him and other
people she was depressed and "suicidal kind of things."  Father, however,
stated he no longer had the note.  C.J., Father's fiancée, testified that she
read the note and it said, " 'Leave son with me.  Don't kill yourself,' with a
smiley face."

At the conclusion of the evidentiary hearing, the court confirmed that it
had reviewed the parties' pleadings, stipulated exhibits, and "viewed at least
three different versions of the video from the [February] incident."  The court
found Mother's testimony to be credible and the evidence established that
"Father, with knowledge of [Mother's] mental health struggles, wrote a note
to the effect, 'Leave son with me and go kill yourself,' which he flashed to her
at a custody visitation exchange which destroyed her mental and emotional
calm."  The court found no evidence to support Father's argument that
Mother misstated the note or that it was taken out of context.  The court
found Mother met her burden of proof by a preponderance of the evidence

7

that Father perpetrated abuse within the meaning of Family Code section 6340.[4] The court granted Mother a two-year restraining order.

Regarding Father's DVRO request, the court found Father's testimony "to be mostly credible." But it found that his allegations of abuse "relate to communications between the parties both during [Mother's] pregnancy and after the child was born relating to relationship issues and custody visitation disputes and that [Mother's] messages do not rise to the level of abuse." The court rejected Father's "allegation that Mother struck their child at the exchange" because "that was not in [Father's] description of the incident in his restraining order application nor can it be seen in the video." It thus denied issuance of a DVRO against Mother.

The court noted that the DVRO against Father triggered the rebuttable presumption against awarding him custody under section 3044. The court awarded Mother sole legal and sole physical custody, and permitted Father to continue his court-ordered parenting time under the existing FOAH but ordered that the child's exchange continue to be supervised by a nonprofessional third party selected by the parties, or by a professional monitor with Father paying all costs if the parties were unable to agree on a third party.

On April 21, 2025, Father filed a second notice of appeal, challenging the court's orders granting Mother's DVRO request and denying his DVRO request.

---

4    All further undesignated statutory references are to the Family Code.

8

DISCUSSION

I.

*Motions to Augment Record*

Father filed three unopposed motions to augment the record. In an order issued November 17, 2025, we deferred ruling on two of these motions, filed October 6 and October 20, 2025.[5]

In his October 6, 2025 motion, Father identified 18 separate documents he wished to add to the appellate record. We grant his request as to page 21, a one-page declaration by Father filed with the court on November 4, 2024. We deny his request as to the remainder, pages 22 to 67, as none of these documents bear any stamp by the superior court that they were filed or lodged for the challenged proceedings. Absent extraordinary circumstances, we will only consider matters that were presented to the trial court before the time it entered the judgment being challenged on appeal. (Cal. Rules of Court,[6] rule 8.155(a)(1); *In re Zeth S.* (2003) 31 Cal.4th 396, 405 ["an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration"]; *Vons Companies Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3, ["Augmentation does not function to supplement the record with materials not before the trial court."], overruled on other grounds by *Bristol-Myers Squibb Co. v. Superior Court* (2017) 582 U.S. 255, 264.)

---

[5] On December 16, 2025, we issued an order denying in part and granting in part the third motion to augment the record, filed on December 5, 2025.

[6] Further undesignated rule references are to the California Rules of Court.

9

In his October 20, 2025, Father identified seven separate documents he wished to add to the appellate record. In our previous order on November 17, 2025, we granted his request to include Mother's declaration filed with the court on November 8, 2024, pages 11 to 13; Father's peremptory challenges to Commissioner Boucek filed June 13 and June 21, 2025, pages 17 to 19; and Father's income and expense declaration filed February 6, 2025, pages 40 to 43. We denied his request to include witness statements, pages 27 to 32, and deferred ruling on the remainder. We now grant his request to include pages 14 to 15 titled "Revocation of Stipulation for Commissioner to Act as Judge Pro Tempore" dated May 19, 2025. We deny his request to include pages 20 to 25, emails from Father to "The UPS Store #7391" dated July 9, 2025; and page 38, a certificate from "Palomar College Public Safety Programs" as these documents were not presented to the court at or before the relevant hearings.

## II.

### *Custody and Visitation Orders*

Father asserts a litany of errors in his challenge to the court's November 27, 2024 FOAH on custody and visitation. We do not find any persuasive. Our review of Father's contentions on appeal is limited by the standards and presumptions that involve substantial deference to the trial court on its discretionary decisions and its resolution of factual issues. The judgment is presumed correct and all ambiguities are resolved in favor of affirmance. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).) Father carries the burden to overcome the presumption of correctness and show prejudicial error. He must do so by providing an adequate record on appeal and presenting argument and legal authority on each contention showing the trial court erred. (*Ibid.*) As a self-represented litigant, he "is entitled to the same, but no greater, consideration" as any other attorney or

10

litigant on appeal and is required to follow the rules. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 523.)

First, Father asserts the court deprived him of his due process right to have a meaningful opportunity to be heard because it "prematurely terminat[ed]" the evidentiary hearing "due to time limitations," failed to review his exhibits "contemporaneously," "did not invite either party to present their version of events and did not question either party or allow an opportunity for cross-examination." We conclude Father has forfeited any due process claim by failing to raise any of these assertions in the trial court at the time of the relevant hearing.[7] *(D.Z. v. L.B.* (2022) 79 Cal.App.5th 625,

---

[7] On December 4, 2024, Father filed an RFO requesting reconsideration of the court's November 27, 2024 FOAH, amendment of the child's birth certificate, and "right of first refusal." In his supporting declaration, Father asserted he was not "able to fully plead" his case "because of the amount of evidence that was submitted in a hearing that wasn't an evidentiary hearing," he had evidence that he did not submit "because of the overwhelming amount that was already submitted," and he disagreed with the court's findings of facts and conclusions of law and asserted the court overlooked certain of his requests, including his request for the child's name change and for Mother to undergo a mental evaluation. On December 10, Father filed another declaration in support of this RFO, again, disagreeing with the court's custody and visitation orders and requesting pursuant to "Rule 3.1590" for an "[a]nnouncement of tentative decision, statement of decision, and judgment" before he files an appeal.

At a hearing on January 16, 2025, the court denied the request for reconsideration of its custody and visitation orders because Father did not identify any new facts or law. It granted Father's request to amend the child's birth certificate to add his name and to change the child's last name to reflect both parents' surname, hyphenated, as well as his request that if either parent is unavailable for three hours or more, the parent shall contact the other to offer the right of first refusal to provide care.

Father's notice of appeal does not identify the January 16, 2025 order and thus it is outside the scope of this appeal. (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170 [" 'Our jurisdiction on appeal is limited in scope to

11

632 ["California courts recognize that claims alleging violations of due process rights can be forfeited by failing to raise them in the trial court."]; *ibid.* [appellant forfeited claim their constitutional right to procedural due process was violated because trial court held hearing on civil harassment restraining order with different methods of appearance for the parties].)

Father did not request nor assert he needed additional time when the court signaled the hearing was coming to an end. He did not request the court review all his exhibits "contemporaneously" with the parties, nor object when the court stated it would keep and review his exhibits and take the matter under submission for a written ruling. He did not request to cross-examine Mother. Even if he had preserved these claims, we would reject the assertion that Father did not have a meaningful opportunity to be heard. Our review of the record confirms that Father was given ample time to present his case, with having both the first and last words at the hearing.

Second, Father asserts the court violated section 217 by denying his request for live testimony. We reject the claim because we have no record that Father requested to present live testimony. Section 217, subdivision (c), requires that "A party seeking to present live testimony from witnesses other than the parties *shall, prior to the hearing, file and serve a witness list* with a brief description of the anticipated testimony." (Italics added.) Both parties were sworn in and provided testimony. Father does not point us to any written witness list in compliance with section 217, nor does he identify any other witness he wanted to testify at the hearing.

---

the notice of appeal and the judgment or order appealed from.' "].) We therefore disregard his opening brief's assertions of error as to the January 16, 2025 order. We also reject his claim the trial court erred in denying a statement of decision as he did not timely request one for the November 27, 2024 hearing.

Third, Father claims the court prejudged his matter by announcing it was not inclined to award " 'any sort of shared parenting,' " asking only Mother for her proposal on custody and visitation and adopting Mother's proposals. We disagree with this characterization of the record. The court allowed both parties to present their views and reasons for their proposed custody and visitation plan, before and after the court made the comment that Father now criticizes. And the full statement by the court was: "[I]t's going to be shared because frequent and continuing contact is the policy of the state. In terms of "jumping to a 50-50 equal sharing time for a two-month[-]old child, the court is not inclined to do that. There are reasons, as explained by [FCS], that they recommend parenting plans based on the developmental age and stage of a child." After that statement, the court continued to invite both parties to state their views on custody and visitation. And ruling the next day, the court adopted FCS's recommendations, not Mother's proposal.

Relatedly, Father asserts that, by stating it was adopting the FCS recommendations, the court failed to independently review evidence and improperly delegated judicial authority to FCS. We reject these unsupported claims too. The court found the FCS recommendations were appropriate given the specific circumstances of the infant child and the parties, and only after listening to the parties' presentations and reviewing their pleadings and exhibits.

We also reject Father's claim that the court relied on a "disputed and biased facilitator report" and that "he had not seen or agreed to the report and requested it be disregarded." When the court commenced the hearing, it ensured that the parties had received and read the FCS report. Father confirmed he had "looked through" the report but did not have a copy with

13

him.  The court printed a copy for him and recessed to allow him time to review it.  When proceedings resumed, Father stated he agreed with FCS's recommendations for joint legal custody and the split holiday schedule and disagreed with the recommendation on physical custody.

As for his assertion that the FCS mediator was biased, Father claimed in the trial court that he "filed a motion against the mediator because [he has] noticed that pretty much most people feel that the mother of—the baby is supposed to go with the mother no matter the case."  We assume he was referring to a declaration he filed on November 4, 2024, in which he stated: "Seems to be a popular opinion that babies belong with the mother or that a mothers [*sic*] role is more important from the beginning[.]  [T]he mediator showed this was her stance as well."  Other than this asserted personal opinion, Father did not provide the trial court with evidence to substantiate his claims of bias.  He could have but did not subpoena the FCS mediator to testify and be subject to cross examination at the hearing.

Turning to the merits of the court's custody and visitation orders, Father devotes 14 lines to his claim that the court erred in making the orders without "findings of detriment, reference to statutory factors, or evidence-based analysis" or considering the child's best interest.  Father is incorrect.  Detriment is not a required finding in an initial custody determination.  "In an initial custody determination, the trial court has 'the widest discretion to choose a parenting plan that is in the best interest of the child.' " (§ 3040, subd. (b).)  It must look to *all the circumstances* bearing on the best interest of the minor child," including the specific factors under section 3011.  (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31–32.)  The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test.  (*Id.* at p. 32.)  "The precise measure is whether the trial court could

14

have reasonably concluded that the order in question advanced the 'best interest' of the child.  We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked."  (*Ibid*.)

Father has not overcome the presumption of correctness because he has failed to provide both an adequate record on appeal and a fair and complete summary of the relevant facts.  (*Jameson, supra*, 5 Cal.5th at pp. 608–609.)  Rule 8.122(b), sets out the required contents of a clerk's transcript, Father's choice of record on appeal.  In addition to other requirements, a clerk's transcript "must" include "[a]ny . . . documents filed or lodged in the case in superior court" pertaining to the issue(s) on appeal (rule 8.122(b)(3)(A)) and "[a]ny exhibit admitted in evidence, refused, or lodged" (*id*., (b)(3)(B)).

Here, according to the superior court's register of actions, Mother filed responses to Father's petition and RFO on November 8, 2024, but neither are included in the record on appeal.  The FCS report which set forth the reasons that persuaded the court to adopt the recommended custody and visitation plan as age-appropriate for the child is also not included in the record.  In the absence of an "adequate record" or "a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court." (*Jameson, supra*, 5 Cal.5th at p. 609.)  These omissions require us to resolve the issue against Father.  (*Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 935 (*Randall*) ["Failure to provide an adequate record on an issue requires that issue be resolved against appellant."].)

Further still, Father fails to provide a fair and complete summary of the relevant facts.  Instead, when arguing his points, he ignores facts and evidence unfavorable to his position.  A party that presents a one-sided version of the facts has forfeited any claim the court's order is not supported by substantial evidence.  (See *Doe v. Roman Catholic Archbishop of Cashel &*

15

*Emly* (2009) 177 Cal.App.4th 209, 218 (*Roman Catholic*) [party that presented a "one-sided version of the facts" "failed in his obligations concerning the discussion and analysis of a substantial evidence issue," resulting in forfeiture of the issue]; *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman & Clark*) [failure to identify all evidence relevant to a point forfeits the issue].)

Lastly, Father argues the cumulative errors collectively denied him due process and constituted structural error.  But since we have found no error, there are none to cumulate.

III.

*DVROs*

We next turn to Father's challenge to the court's orders on the parties' DVRO requests.  We review the court's order granting or denying a DVRO for abuse of discretion, and its factual findings for substantial evidence.  (*M.S. v. A.S.* (2022) 76 Cal.App.5th 1139, 1143 (*M.S.*).)  "The inquiry is whether substantial evidence supports the court's finding, not whether a contrary finding might have been made."  (*Id.* at p. 1144.)  We accept as true all evidence tending to establish the correctness of the trial court's findings and resolve every conflict in favor of the judgment.  (*Ibid.*)  However, the question whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law that we review de novo.  (*Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 560.)

The purpose of the Domestic Violence Prevention Act (DVPA) (§ 6200 et seq.) "is to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence."  (§ 6220.)  It authorizes courts to issue restraining orders to

16

enjoin "abuse," which is includes harassing or disturbing the peace of another. (§§ 6203, subd. (a)(4), 6320, subd. (a).) " '[D]isturbing the peace of the other party' refers to conduct that based on the totality of the circumstances, destroys the mental or emotional calm of the other party." (§ 6320, subd. (c).) "A trial court has broad discretion under the DVPA to determine whether to grant a petition for a restraining order." (*M.S., supra,* 76 Cal.App.5th at p. 1143.)

In his appellate briefing addressing the court's orders on the parties' DVRO requests, Father states "this appeal challenges legal error, *not* the weight of the evidence." (Capitalization omitted, italics added.) In addition to this concession, we conclude there is substantial evidence supporting the court's issuance of a DVRO for Mother and denial of a DVRO for Father. This is so because Father has, again, failed to overcome the presumption of correctness by (1) presenting a decidedly one-sided version of the relevant facts and procedural background (*Roman Catholic, supra,* 177 Cal.App.4th at p. 218; *Foreman & Clark, supra,* 3 Cal.3d at p. 881; and (2) failing to provide an adequate record on appeal (Rule 8.122(b); *Randall, supra,* 2 Cal.App.5th at p. 935.) On this last point, Father has failed to provide the reporter's transcript of the second day of the four-day evidentiary hearing; Mother's DVRO request and her supporting declaration, which attached a screenshot of Father's note; and Mother's videos of the January exchange with Father's music lyrics and the February exchange with Father's note. The court specifically relied on this body of evidence to conclude Father had perpetrated abuse. We thus assume they contain substantial evidence to support the trial court's factual findings and exercise of discretion in issuing the DVRO against Father.

17

We turn to Father's contentions of "legal error."[8]  As to the two-year DVRO against Father, Father asserts the court failed to apply "the mandatory dominant-aggressor analysis under sections 3044 and 6305."  He contends sections 3044 and 6305 require the court, "where competing [domestic violence] allegations exist, to determine the primary or dominant aggressor by considering" prior acts of violence or aggression, self-defense, credibility, and coercive, manipulative, or controlling conduct.  Father is incorrect.  Section 3044 is inapplicable to the court's grant or denial of a DVRO; it provides for a rebuttable presumption against an award of sole or joint physical or legal custody of a child to a person found to have perpetrated domestic violence.  (§ 3044, subd. (a).)  Section 6305 is also inapplicable here.  It provides, "The court *shall not issue a mutual order* enjoining the parties from specific acts of abuse described in Section 6320 unless . . . [¶] . . . [b]oth parties personally appear and each party presents written evidence of abuse or domestic violence . . . using the mandatory Judicial Council restraining

---

8    Although Father begins his argument stating that his "appeal challenges legal error, not the weight of the evidence," he spends a significant amount of time arguing Mother was not credible because he "demonstrated— through testimony, exhibits, and declarations—that [Mother's] allegations were inconsistent and self-impeaching" and the court's failure to address the contradictions constitutes legal error.  Father is incorrect.  When an appellant challenges a trial court's resolution of factual issues, our role is limited to reviewing those findings for substantial evidence.  (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.)  "It is not our role as a reviewing court to reweigh the evidence or to assess witness credibility."  (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)  And when we consider the validity of a trial court's factual findings, "we resolve all conflicts in the evidence in [the respondent's] favor and indulge all reasonable, legitimate inferences in favor of upholding the trial court's order."  (*McCord v. Smith* (2020) 51 Cal.App.5th 358, 364.)  We thus decline Father's invitation to reweigh the court's credibility determinations.

18

order application form," and "[t]he court makes detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense." (§ 6305, subd. (a), italics added.) The court did not issue a mutual order enjoining both Mother and Father; it issued an order restraining only Father from abuse.

Father contends the court improperly shifted the burden by stating that Father would need a copy of the note to " 'show it doesn't' " state, as Mother proved, " 'Leave son with me and go kill yourself.' " We disagree that the court improperly shifted the burden. It explained several times that Mother had the burden of proof by a preponderance of the evidence and, to carry that burden, she had presented testimony, the video evidence, and a screenshot of the note. The court asked Father if he still had a copy of the note to support *his defense* that the note said, " 'Leave son with me. Don't kill yourself.' " He did not.

Father next asserts the court erred in denying his DVRO request because it "improperly applied a narrow definition of abuse" because the court failed to consider that abuse under the DVPA "includes harassment, disturbing the peace, coercive control, intimidation, and conduct that destroys emotional calm." We disagree. We see nothing in the record to suggest the court misunderstood the scope of conduct that can constitute "abuse" under the DVPA. To the contrary, the court granted Mother's request for a DVRO on the basis that Father's note telling Mother "to go kill yourself" was abuse because it "destroyed her mental and emotional calm."

The court denied Father's DVRO request because he suffered from a failure of proof. After viewing three versions of the video evidence of the February 20, 2024 exchange, the court found none supported Father's allegation that Mother struck their child. The court also found the text

19

messages Father presented in his attempt to demonstrate that Mother was harassing and disturbing his peace did "not rise" to abuse. Rather, the court found the text messages pertained to communications relating to their relationship and custody visitation disputes and, impliedly, there was nothing abusive in those communications to warrant a restraining order against Mother. Because Father does not challenge the weight of the evidence, we will not disturb the court's factual findings.

IV.

*Asserted Judicial Bias*

Father asserts Commissioner Boucek demonstrated bias against him at the DVRO proceedings, which constitutes structural error requiring automatic reversal of the orders on the parties' DVRO requests.[9] He makes a myriad of claims that the court abandoned neutrality and engaged in judicial advocacy, including for example, by showing a "[p]redisposition" to credit Mother while demonstrating "[h]ostility" toward him; frequently interrupting Father's testimony while "siding" with Mother's "version of events despite contradictory evidence"; demonstrating "impatience" with Father "while guiding" Mother's testimony; and "[p]rejudging evidence and denying full

---

[9] In the section of his appellate opening brief challenging the court's November 27, 2024 FOAH on custody and visitation orders, Father asserts under the subheading "Repeated Restrictions on [Father's] Testimony Reinforced the Appearance of Bias" that "This Pattern continued across multiple hearings and mirrors the due process violations requiring reversal in Carlsson." That is it. Thus, to the extent Father intended to raise a claim that judicial bias affected the November 27, 2024 FOAH, he has waived or forfeited any such claim by making only conclusory and/or speculative assertions of judicial bias, unsupported by citations to the record, and not presenting any substantive legal analysis showing any prejudicial bias by the trial court. (*Jameson, supra*, 5 Cal.5th at pp. 606–609.)

20

presentation of video evidence." Father has waived or forfeited any claim of judicial bias by not timely asserting these claims in the proceedings below.

"Bias and prejudice are grounds for disqualification of trial judges." (*Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1218 (*Moulton*), citing Code Civ. Proc., § 170.1, subd. (a)(6).) If judges fail to recuse themselves, there is a statutory procedure under Code of Civil Procedure section 170.3 to litigate the issue. (*Moulton,* at p. 1218.) A party seeking to disqualify a judge on grounds a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial, or any other ground identified in section 170.1, "may file with the clerk a written verified statement objecting to the hearing or trial before the judge and setting forth the facts constituting the grounds for disqualification of the judge." (Code Civ. Proc., § 170.3, subd. (c)(1).) Important here, "[t]he statement shall be presented *at the earliest practicable opportunity* after discovery of the facts constituting the ground for disqualification." (*Ibid.*, italics added.)

"This strict promptness requirement is not to be taken lightly, as a failure to comply constitutes forfeiture or an implied waiver of the disqualification." (*Tri Counties Bank v. Superior Court* (2008) 167 Cal.App.4th 1332, 1337 (*Tri Counties*); *In re Steven O.* (1991) 229 Cal.App.3d 46, 54 (*Steven O.*) ["Failure to comply with this requirement constitutes an implied waiver of the disqualification."].) "The purpose of the requirement that alleged grounds for disqualification be asserted at the earliest practicable opportunity is that it would seem . . . intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not. In other words, a party should not

21

be allowed to gamble on a favorable decision and then raise such an objection in the event he is disappointed in the result." (*Tri Counties,* at pp. 1337–1338 [cleaned up]; *Steven O.,* at p. 55 ["This promptness requirement is not to be taken lightly, especially when the party delays in challenging the judge until after judgment. Otherwise, a defendant can sit through a first trial hoping for an acquittal, secure in the knowledge that he can invalidate the trial later if it does not net a favorable result."].)

According to the register of actions, both parties filed their stipulation to have Commissioner Boucek act as a temporary judge in their case on November 26, 2024. At no time before the November 26, 2024 hearing on custody and visitation or the commencement of DVRO hearings did Father withdraw his stipulation and consent to Commissioner Boucek.

Father verbally raised a complaint of judicial bias on the *third day* of the continued DVRO hearing (April 1, 2025), with a request that the court "recuse herself." Citing Code of Civil Procedure section 170.1, Father stated: "In the interest of justice, reasonable doubt, and substantial doubt, along with my peace of mind, I respectfully ask and plead Your Honor to recuse herself. I'm 100 percent certain I will never get a fair and impartial trial unless I'm assigned a new justice, preferably, an appointed judge." Father did not provide any specific grounds for his assertion of bias. However, Commissioner Boucek denied the request, stating she did not have any concerns about her ability to be impartial and that the request was not timely. Specifically, the court stated it "has now had at least two hearings on the cross-domestic violence restraining orders, last time being the start of the evidentiary hearing where both parties presented testimony and other evidence, and so we are going to continue and complete this evidentiary hearing."

Despite verbally raising his general concerns of bias on April 1, 2025, Father did not file a peremptory challenge until June 13, 2025, *after* the court had issued the DVRO against Father and denied his DVRO request, *and* even after Father had filed a notice of appeal challenging the DVRO orders. He filed another peremptory challenge on July 21, 2025 and, according to his briefing on appeal, he made "three additional verbal recusal requests on July 29, 2025, August 7, 2025, and September 16, 2025."

These efforts were all too late. (*Tri Counties, supra*, 167 Cal.App.4th at p. 1337 ["This strict promptness requirement is not to be taken lightly, as a failure to comply constitutes forfeiture or an implied waiver of the disqualification."]; *Steven O., supra*, 229 Cal.App.3d at p. 54 ["Failure to comply with this requirement constitutes an implied waiver of the disqualification."].) We conclude Father forfeited any right to challenge the Commissioner or her rulings for bias. (*Moulton, supra*, 111 Cal.App.4th at p. 1218 [party waived claims of judicial bias based on comments the trial judge made because the party failed to object to or challenge the judge in the trial court].)

To the extent Father contends the grounds for disqualification he asserts also establish the court violated his due process right to an unbiased judge, he has forfeited that challenge for reasons we have already explained. "It is true that [Code of Civil Procedure] section 170.3, subdivision (d), does not bar appeal from a final judgment on constitutional grounds of judicial bias. Nevertheless, a litigant should seek to resolve such issues by the required statutory means and 'his negligent failure to do so may constitute a forfeiture of his constitutional claim.' This is particularly true in civil cases where 'a constitutional question must be raised at the earliest opportunity or it will be considered to be waived.'" (*Tri Counties, supra*, 167 Cal.App.4th at

p. 1339 ["We conclude petitioner's due process claims were forfeited by this dilatory conduct."].) Even if not forfeited, Father has the burden to show the alleged bias was so prejudicial that it deprived him of a fair hearing, as opposed to a perfect one. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1112, overruled on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151.) We have reviewed the record on appeal. Contrary to his assertions, the record demonstrates Father received a fair hearing by an impartial and unbiased court.[10]

## DISPOSITION

The November 27, 2024 FOAH on custody and visitation is affirmed. The April 18, 2025 DVRO enjoining Father and the order denying Father's DVRO request are affirmed. The parties to bear their own costs.


DO, J.

WE CONCUR:


MCCONNELL, P. J.


O'ROURKE, J.

---

[10] In the last section of Father's appellate brief, he makes conclusory assertions that the court erred by imposing "financial obligations and procedural burdens," citing references to sanctions under section 271. We see nothing in the record to suggest the court imposed section 271 sanctions against Father. However, these assertions are forfeited because they are conclusory, undeveloped, and unsupported by citations to the record.